## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| NICHOLAS LOCCISANO, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No.  2:23-CV-885 |
| | ) | |
| vs. | ) | |
| | ) | |
| DELLER PROFESSIONAL | ) | |
| SERVICES, INC., JOHN DELLER, AND | ) | |
| PAMELA DELLER, | ) | |
| *jointly and severally,* | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| *Defendants*. | ) | |

### COMPLAINT IN CIVIL ACTION

Plaintiff, Nicholas Loccisano, by and through the undersigned counsel, now files the within Complaint in Civil Action against Defendants, Deller Professional Services, Inc., John Deller, and Pamela Deller and avers as follows:

### PARTIES

1.     Plaintiff, Nicholas Loccisano (hereinafter, "Plaintiff") is an adult individual who resides at 1121 High Street, Springdale, Pennsylvania 15144.

2.     Deller Professional Services, Inc., (hereinafter, "DPS") is a general contractor and trucking company that specializes in demolition and has business operations located at 125 Walcott Drive, Gibsonia, Pennsylvania 15044 (hereinafter, the "Facility").

3.     John Deller (hereinafter, "Mr. Deller") was the owner and operator of DPS and exercised control over the payroll practices and procedures of DPS.

4.     Pamela Deller (hereinafter, "Ms. Deller") (collectively, DPS, Mr. Deller and Ms. Deller are referred to as "Defendants") was imbued with authority by DPS and Mr. Deller and

exercised control and influence over the payroll practices and procedures and further was responsible for effectuating DPS' wage and timekeeping practices and procedures.

## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings this lawsuit asserting violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, (hereinafter, the "FLSA").

6.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff alleges violations of the Pennsylvania Minimum Wage Act of 1968, 43 Pa. Cons. Stat. § 333.101, *et seq.*, (hereinafter, the "MWA"), the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* (hereinafter, the "WPCL"), and asserts Pennsylvania state common law claims for breach of contract and unjust enrichment. Ultimately, as explained more thoroughly below, the factual basis for the Pennsylvania statutory and common law claims are so related to the FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue is also proper in this Court because Defendants are residents of the Commonwealth of Pennsylvania and a substantial part of the events or omissions giving rise to the claims averred herein occurred in Finleyville, an unincorporated community located in Richland Township, Allegheny County, which is located within the geographical confines of the United States District Court for the Western District of Pennsylvania. Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

8.      This Court has personal jurisdiction over Defendants because Defendants routinely and regularly conduct business in the Commonwealth of Pennsylvania and routinely and regularly solicits business in Pennsylvania.  Further, as averred more fully below, Defendants violated

numerous statutory provisions of Pennsylvania law and Pennsylvania common law, and all the events giving rise to Defendants' unlawful conduct, including the harm that Plaintiff sustained therefrom, occurred in Pennsylvania. As such, this Court, at bare minimum, may exercise personal jurisdiction over Defendants because Defendants have the required minimum contacts with this forum for purposes of Pennsylvania's long-arm statute and the Due Process Clause of the United States Constitution.

9.      This Court may therefore properly maintain personal jurisdiction over Defendants in light of Defendant's extensive conduct within Pennsylvania and this judicial district in particular, and the exercise of personal jurisdiction complies with traditional notions of fair play and substantial justice.

## GENERAL ALLEGATIONS

10.     On July 19, 2021, Plaintiff commenced his employment with Defendants, working first as a driver and later as a laborer/heavy machine operator, loading and driving trucks and digging and grading as part of excavation and/or reconstruction projects, until his resignation on September 16, 2022.  Significantly, Defendants compensated Plaintiff on an hourly basis.  More specifically, Defendant paid Plaintiff $42.12 per hour.

11.     At all times relevant hereto, Plaintiff was classified as a "non-exempt" employee pursuant to the FLSA and the MWA.

12.     In February 2022, Plaintiff and a coworker, Mike Mason (hereinafter, "Mr. Mason"), noticed that their paystubs displayed fluctuating and incorrect data in the year-to-date (YTD) column and discovered that Defendants do not use a payroll processor.

13.     In February 2022, a general contractor hired DPS in a subcontractor capacity to assist in a public works contract awarded under the Pennsylvania Prevailing Wage Act, 43 P.S. §

3

165-1, *et seq.*, at Hampton Township High School, in Hampton Township, Allegheny County (hereinafter, the "Project").

14.     From September 2021 to September 16, 2022, Plaintiff and Mr. Mason worked on the Project and were classified as Class 3 Laborers, installing new storm system drains, replacing old roads and sidewalks, and transporting dirt. According to the subcontract and prevailing wage rate, Defendants were to pay Plaintiff a wage of $48.00 per hour.

15.     From September 2021 to September 16, 2022, Plaintiff worked, on average, sixty-five (65) to seventy (70) hours per week at the Project, but in no event less than sixty-five (65) hours.

16.     Mr. Deller took note of the hours the individual employees worked and would record them each week.

17.     However, during the weekly pay periods in the above-mentioned timeframe, Defendants would only pay Plaintiff for forty (40) hours of work at $42.12 per hour, plus an additional ten (10) hours at $24.00 per hour (hereinafter, "Overtime Deduction Practice No. 1").

18.     Other weeks, Defendants would only pay Plaintiff for thirty (30) hours of work at $42.12 per hour, plus an additional 30 hours of work at $24.00 per hour (hereinafter, "Overtime Deduction Practice No. 2").

19.      In other words, regardless of whether Defendants would apply Overtime Deduction Practice No. 1 or Overtime Practice No. 2 to Plaintiff's weekly paycheck, in either situation, Defendants refused to pay Plaintiff for the total amount of hours that he worked and, furthermore, absolutely refused to pay Plaintiff *any* overtime pay for hours that Plaintiff worked above and beyond 40 hours.

20.     Indeed, as reflected in Plaintiff's paystubs, Defendants simply compensated Plaintiff at the "regular pay" standard, which was recorded in the "regular pay" column. Otherwise, Defendants never recorded any type of "overtime time" in the "overtime pay" column of the paystubs.

21.     Instead of paying Plaintiff at an overtime rate of pay, Defendants devised implemented schemes, i.e., Overtime Deduction Practice No. 1 and Overtime Deduction Practice No. 2, whereby it would pay Plaintiff one-half (or less than one-half) of his regular hourly rate of pay as compensation for the hours that Plaintiff worked above and beyond forty (40) hours.

22.     In September 2022, after Plaintiff realized that Defendants were utilizing Overtime Deduction Practice No. 1 or Overtime Deduction Practice No. 2, Plaintiff complained to Mr. Deller about the pay discrepancies. In essence, Mr. Deller disregarded and/or ignored Plaintiff's comments and continued employing Overtime Deduction Practice No. 1 or Overtime Deduction Practice No. 2.

23.     On September 16, 2022, Plaintiff tendered his verbal resignation to Mr. Deller in person.

24.     During his final week of employment, Plaintiff worked a total of sixty-five (65) hours. However, in his final paycheck, Defendants only paid Plaintiff for forty-five (45) hours of work and completely and utterly failed to compensate Plaintiff at any rate, much less the overtime rate of pay, for approximately twenty (20) hours of work (hereinafter, the "Final Paycheck Overtime Deduction Practice").

25.     Upon receiving his final paycheck and paystub, Plaintiff asked Mr. Deller why he was not paid for, and why the paystub was missing, the twenty (20) hours that he had worked during his final week of employment.

26.     In response, Mr. Deller instructed Plaintiff that he would not be getting paid for those twenty (20) hours of work.

27.     To date, Defendants have failed to pay Plaintiff the wages it owes him as a result of its unlawful implementation of Overtime Deduction Practice No. 1, Overtime Deduction Practice No. 2, and the Final Paycheck Overtime Deduction Practice.

**COUNT I**
**FAILURE TO PAY OVERTIME WAGES IN**
**VIOLATION OF THE FLSA**
**29 U.S.C. § 201, *et seq*.**

28.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

29.     Prefatorily, the FLSA mandates two (2) minimum rates of pay for time "employees" spend dedicated to workplace operations for covered "employers" who constitute an "enterprise engaged in commerce." 29 U.S.C. §§ 206, 207. Relevant here, the FLSA establishes a heightened rate of one hundred fifty percent (150%) multiplied by the employee's base rate of pay for any hours worked in excess of 40 hours within a seven-day period, commonly known as "overtime" or "time and a half" pay. 29 U.S.C. § 207.

30.     The FLSA defines the term "employer" expansively to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

31.     In interpreting this broad phrase, the United States Court of Appeals for the Third Circuit has concluded that liability for violations of the FLSA clearly attaches to the corporate entity itself, here, Defendant, regardless of which employee and/or agent implemented to unlawful policy. *See Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014).

32.     Somewhat relatedly, the FLSA defines "employ" to mean "to suffer or permit to work." 29 U.S.C. § 203(g).

33.    Defendants extended a position-for-hire to Plaintiff with specified duties, start-times, and pay-rates.  Defendants also possessed ultimate authority and control over Plaintiff and instructed Plaintiff to perform certain tasks for the financial benefit of Defendants.  At all times relevant hereto, Defendants exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship.

34.    At all times relevant hereto, Defendants also controlled the general terms and conditions of Plaintiff's workplace duties, dictated the compensation structure and scheme, and mandated the wage keeping practices that Plaintiff was subjected to as a condition of employment.

35.    As a corporate entity responsible for the acts of its employees and/or agents acting withing the scope of their authority, Defendants "permitted" Plaintiff to work and thus "employed" Plaintiff per 29 U.S.C. § 203(g).

36.    As such, Defendants are an "employer" pursuant to 29 U.S.C. § 203(d) vis-à-vis Plaintiff and are therefore liable for violations of the FLSA.

37.    Moreover, pursuant to 29 U.S.C. § 203(s)(1), the mandates of the FLSA apply to an organization/enterprise that satisfies two statutory criteria: (1) it must be engaged in "commerce," and (2) have an annual gross volume of sales not less than $500,000.00.  *Id.*

38.    Under the FLSA, the term "commerce" is specifically defined to include activities such as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).

39.    In elaborating on the term "commerce," the Third Circuit concluded in *Marshall v. Brunner*, 668 F.2d 748, 751 (3d. Cir. 1982), that an employer's use of out-of-state manufactured equipment which the employer transported in-state for its operations was sufficient to establish that the employer was an "enterprise engaged in commerce" under the FLSA.

40.     Upon information and belief, Defendants purchased materials, supplies, and medical equipment necessary and integral for its business operations to and from out-of-state vendors for the express purpose of utilizing said materials, supplies, and equipment for its business operations within Pennsylvania.

41.     Additionally, Defendants transmitted and received payments and credits from out-of-state vendors by and through the use of the internet, digital payment processing services which traverse state lines, and through interstate mail via the United States Postal System.

42.     Therefore, Defendants regularly engaged in "commerce" sufficient to satisfy the first prong of 29 U.S.C. § 203(s)(1)(A)(i).

43.     Upon information and belief, Defendants provided construction and/or trucking services in various counties in the Commonwealth of Pennsylvania, and given the nature, size, scope, and industry of its business, and the frequency of the services sales that it has effectuated throughout Pennsylvania, Defendants had an annual dollar volume of sales in excess of $500,000.00.

44.     Therefore, Defendants satisfy the second prong of 29 U.S.C. § 206(s)(1)(A)(i).

45.     Accordingly, Defendants are an "enterprise engaged in commerce" within the purview of 29 U.S.C. § 206(s)(1).

46.     Furthermore, the FLSA defines "employee" to include any individual "employed by an employer" and excludes certain circumstances that are inapplicable to the instant facts, such as individuals employed by the United States Government or the United States Postal Service.   29 U.S.C. § 203(e)(1).

47.     To effectuate the remedial purpose of the FLSA, the Third Circuit interprets "employee" in an "exceedingly broad" manner. *Safarian v. Am. DG Energy Inc.*, 622 F. App'x 149, 151 (3d Cir. 2015), citing *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991).

48.     In evaluating whether an individual is an "employee" under the FLSA, the Third Circuit examines the "economic reality" surrounding the workplace relationship and utilizes six factors to determine an individual's employment status:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin*, 949 F.2d at 1293, quoting *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985).

49.     "Not only should courts examine the circumstances of the whole activity, they should [also] consider whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service." *Id.* (internal citation and quotation marks omitted).

50.     At all times relevant hereto, Defendants possessed and, in fact, exercised its right to control Plaintiff's job duties, namely with respect to the decisions and directives concerning where, how, and when Plaintiff was to provide trucking and/or laborer services.

51.     Defendants also exerted significant control over the manner in which Plaintiff performed his workplace duties. Defendants delineated the methodologies involved in the completion of Plaintiff's duties, denoted his expected rate of productivity, dictated the speed in

which Plaintiff was to complete his tasks, and designated the specific projects on which Plaintiff was to perform trucking and/or laborer services.

52.    Plaintiff had no personal financial investment in Defendants' operations.  Nor did Plaintiff have an opportunity to obtain extra renumeration based on the exercise of managerial skill. Plaintiff never worked in a managerial or supervisory capacity.

53.    Instead, Plaintiff was compensated at a determined hourly rate in his role.  All the compensation that Defendants disbursed to Plaintiff was derived from hours recorded within Defendants' Overtime Deduction Practice No. 1, Overtime Deduction Practice No. 2, and the Final Paycheck Overtime Deduction Practice, discussed above; Plaintiff was dependent on these schemes of compensation for his pay; and he never had the opportunity to obtain bonuses or other forms of additional renumeration based on the exercise of managerial skill or productivity.

54.    Further, Plaintiff did not utilize his own equipment while working for Defendants, and Defendants supplied Plaintiff with all the supplies and equipment necessary for him to perform his job duties.

55.    In performing his job duties, Plaintiff did not utilize any "special skill" akin to that of a licensed professional.

56.    Nonetheless, the workplace duties to which Plaintiff completed were an integral component of Defendants' day-to-day operations, as evidenced by the amount of overtime and energy that Plaintiff expended during his employment with Defendants.

57.    Finally, Plaintiff was completely dependent on Defendants to perform trucking and/or laborer services because Defendants had the clientele and wherewithal necessary to bestow Plaintiff with work.

58.    Therefore, Plaintiff is an "employee" for purposes of the FLSA.

59.     Given Defendants' status as an "employer" and an "enterprise engaged in commerce," and Plaintiff's status as an "employee," Defendants were obligated to comply with the overtime rate of pay requirements of the FLSA.

60.     That is, at all times hereto, Defendants were mandated to pay Plaintiff one hundred fifty percent (150%) of his corresponding base rate of pay for any time worked beyond forty (40) hours in a seven-day (7) period.  29 U.S.C. § 207(a)(1).

61.     As previously averred in this Complaint, from September 2021 to September 16, 2022, Plaintiff worked, on average, sixty-five (65) to seventy (70) hours per week at the Project.

62.     Consequently, Plaintiff engaged in hours of work that Defendants were legally obligated to compensate him at the overtime rate of pay.

63.     However, despite Plaintiff's protests and complaints to Defendants about the lack of overtime pay, Defendants explicitly refused to pay Plaintiff overtime pay for the overtime hours that he worked.

64.     Instead, as averred above, Defendants implemented Overtime Deduction Practice No. 1, Overtime Deduction Practice No. 2, and the Final Paycheck Overtime Deduction Practice and effectuated a scheme that refused to pay Plaintiff any overtime whatsoever for the number of hours that Plaintiff worked above and beyond forty (40), on a weekly basis.

65.     Therefore, Defendants violated 29 U.S.C. § 207(a)(1) in failing to pay Plaintiff overtime wages.

66.     Otherwise, 29 U.S.C. § 216(b) of the FLSA provides that when an employer violates 29 U.S.C. § 207(a)(1), an employee may collect liquidated damages in an amount equal to the amount of wages that are due and owing and, additionally, an award of attorney's fees.

67.     An award of liquidated damages pursuant to the FLSA is not penal in nature, but rather, is viewed as a compensatory remedy. *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991), citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942).

68.     Indeed, the Supreme Court of the United States has opined on the compensatory nature of this remedy, describing it as compensation for the "workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Schonewolf v. Waste Mgmt., Inc.*, No. 17-3745, 2018 BL 92619, at *5 (E.D. Pa. Mar. 19, 2018) citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945).

69.     Furthermore, the award of liquidated damages is mandatory unless an employer can make a "showing of good faith and reasonable grounds for its conduct." *Martin*, 949 F.2d at 1299.

70.     Defendants' willful and knowing actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the FLSA, deprivation of the statutorily required overtime rate of pay, and the total amount of Plaintiff's damages.

71.     Defendants are unable to meet its burden of establishing "good faith and reasonable grounds" for their violation of Plaintiff's rights. This is demonstrated by Defendants' willful animus in flagrantly disregarding its responsibilities and obligations as an employer.

72.     Therefore, Defendants are liable to Plaintiff for actual damages (lost wages), liquidated damages, as well as reasonable attorney's fees, costs, and expenses pursuant to 29 U.S.C. § 216(b).

73.     As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment

and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT II
## FAILURE TO REMIT OVERTIME WAGES IN
## VIOLATION OF THE MWA
## 43 Pa. Stat. § 333.101, *et seq.*

74. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

75. The MWA, much like its federal law counterpart in the FLSA, mandates a heightened rate of pay for any hour worked in excess of 40 hours per work week.  See 43 P.S. § 333.104.

76. Specifically, Section 4(c) controls the premium compensation rate for overtime hours and states, in relevant part, that "[e]mployees shall be paid for overtime not less than one and one-half times the employee's regular rate as prescribed in regulations promulgated by the secretary…." 43 P.S. § 333.104(c).

77. Nearly identical to the pertinent provision of the FLSA, the MWA defines "employer" to include "any association, corporation, individual, partnership," or "any person or group or persons acting, directly or indirectly, in the interest of an employer in relation to any employee." 43 P.S. § 333.103(g).

78. Analogous to the case law interpreting the FSLA, the definition of "employer" is expansively construed within the MWA to, in essence, render a corporate entity liable *per se* for

violations of the FLSA. See *Schneider v. IT Factor Prods.*, 2013 BL 341183, at *4 (E.D. Pa. Dec. 10, 2013), citing *Scholly v. JMK Plastering, Inc.*, 2008 BL 141013, at *4 (E.D. Pa. June 25, 2008).

79.    As previously averred, and for the same reasons Defendants are an "employer" for purposes of the FLSA, Defendants are also an "employer" for purposes of the MWA.

80.    Defendants are also a corporation organized under the laws of the Commonwealth of Pennsylvania, by and through which individuals are employed for a commercial purpose and the financial benefit of Defendants, within the state of Pennsylvania.

81.    The MWA defines "employee" to include "any individual employed by an employer." 43 P.S. § 333.103(h).

82.    In line with its FLSA counterpart, the definition of "employ" is broadly defined as to "suffer or permit to work." 43 P.S. § 333.103(f).

83.    In determining whether an individual is an "employee" within the MWA, the Commonwealth Court has held the "economic reality test" utilized within the framework of the FLSA is the applicable standard for making such a determination under the MWA. *Commonwealth v. Stuber*, 822 A.2d 870, 873 (Pa. Cmwlth. 2003).

84.    As previously averred, and for the same reasons Plaintiff is an "employee" for purposes of the FLSA, Plaintiff is also an "employee" for purposes of the MWA.

85.    Consequently, given Defendants' status as an "employer" and Plaintiff's status as an "employee," Defendants were obligated to comply with the overtime wage requirements of the MWA.

86.    However, as averred above, Defendants explicitly refused to pay Plaintiff any wages for the overtime hours that she worked.

87.    Therefore, Defendants violated 43 P.S. § 333.104(c).

88.    In addition, the MWA provides for the recovery of attorney's fees and costs when an employer fails to pay an employee in accordance with Section 4(c) of the MWA.

89.    Therefore, Defendants are liable to Plaintiff for actual damages (lost wages), liquidated damages, as well as reasonable attorney's fees, costs, and expenses pursuant to 43 P.S. § 333.113.

90.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT III**
**FAILURE TO REMIT WAGES IN**
**VIOLATION OF THE WPCL**
**43 P.S. § 260.1 *et seq*.**

91.    Plaintiff incorporates the allegations contained in in the paragraphs above, as if fully set forth at length herein.

92.    The WPCL provides the employee with a statutory remedy to enforce its rights where an employer breaches its fundamental contractual obligation to pay wages owed to said employee.  See *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

93.    The "contract" between the employer and the employee governs the determination of the specific wages earned by the employee. *Id.*, citing *Sendi v. NCR Comten, Inc.*, 800 F.2d 1138 (3d Cir. 1986).

94.     This statutory remedy created by the WPCL established both a private cause of action to any employee to whom "any type of wages" are owed and bestowed "any court of competent jurisdiction" with the power to maintain such an action.  43 P.S. § 260.9a(b).

95.     The WPCL defines an "employer" to include every person, "association," or "corporation" and, further, "any agent or officer of any [corporation] employing any person in this Commonwealth."

96.     Defendants are a business "association" and/or "corporation" that employs individuals, including Plaintiff, within the geographic boundaries of the Commonwealth of Pennsylvania and, therefore, is an "employer" under 43 P.S. § 260.2a.

97.     As averred repeatedly throughout this Complaint, Defendants and Plaintiff have effectuated an employment relationship, whereby Plaintiff was an "employee."  This factual reality remains true for purposes of the WPCL as well.

98.     The WPCL defines "wages" to include all "earnings of an employee" and further includes within this definition any "fringe benefits or wage supplements."  43 P.S. § 260.2a.

99.     Plaintiff has sufficiently accrued "wages" within the purview of 43 P.S. § 260.2a, because he engaged in the performance of workplace duties for Defendants in exchange for compensation in the form of an hourly rate commensurate with the time Plaintiff expended in performance of said duties.

100.    Defendants have not asserted a dispute over the wages due and owing to Plaintiff and have not provided written notice of conceded or disputed wages associated with Plaintiff pursuant to 43 P.S. § 260.6.

101.     The WPCL imposes a duty on each employer to pay its employees all wages due and owing on established regular paydays (the "Established Payday Procedure"), which is to be designated in advance by the employer.  43 P.S. § 260.3(a).

102.     Defendants' Established Payday Procedure was the disbursement of employee pay on a weekly basis.

103.     Section 260.10 of the WPCL permits an award of liquidated damages equal to twenty-five (25%) of the underlying amount of wages that are due and owing to an employee when an employee fails to pay the wages that are due and owing within thirty (30) days of the Established Payday Procedure and the employer does not lodge a good faith contest or dispute.

104.     Accordingly, per the above statutory provisions, Defendants were legally obligated to provide Plaintiff with his owed wages when he was not paid those wages for thirty (30) days beyond Defendants' Established Payday Procedure.

105.     By omission, Defendants have refused to pay Plaintiff all wages due and owing to him well beyond thirty (30) days of the date of the Established Payday Procedure.

106.     As previously stated, the wages that were, are, and continue to be owing are those that have resulted from Defendants' implementation and utilization of Overtime Timekeeping Practice No. 1, Overtime Timekeeping Practice No. 2, and the Final Paycheck Overtime Deduction Practice.

107.     To date, Defendants have not paid Plaintiff the above-mentioned wages that are due and owing to Plaintiff. As such, Defendants have violated 43 P.S. § 260.10 in failing to pay owed wages to Plaintiff.

108.     Additionally, Defendants have not asserted (and cannot assert) a good faith contest or dispute as to the amount of Plaintiff's disbursed wages.

109.    Defendants' actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the WPCL, deprivation of his statutory entitlement to accrued wages, and the total amount of Plaintiff's damages.

110.    Consequently, Plaintiff is entitled to an award of liquidated damages pursuant to 43 P.S. § 260.10.

111.    Moreover, 43 P.S. § 260.9a(f) mandates that where a plaintiff obtains a favorable judgment, the plaintiff is entitled, as a matter of right, to an award of attorneys' fees. 43 P.S. § 260.9a(f).

112.    As such, Plaintiff is also entitled to reasonable attorney's fees pursuant to 43 P.S. § 260.9a(f) that were incurred as a result of redressing Defendants' conduct described hereinabove.

113.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT IV
## BREACH OF CONTRACT IN VIOLATION OF
## PENNSYLVANIA COMMON LAW

114.    Plaintiff incorporates the allegations contained in in the paragraphs above, as if fully set forth at length herein.

115.    To establish an action sounding in breach of contract, a plaintiff must establish "(1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages."

18

*Sullivan v. Chartwell Inv. Partners, L.P.*, 873 A.2d 710, 717 (Pa. Super. 2005), citing *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269 (Pa. Super. 2002).

116.    In a bona fide contractual offer, Defendants verbally extended Plaintiff the opportunity to exchange his time and efforts, within the context of gainful employment with Defendants, for, amongst other things, a designated rate of $42.12 per hour.

117.    Alternatively, with respect to the Project, Defendants entered into a written subcontractor agreement wherein it promised to pay Plaintiff a designated rate of $48.00 per hour.

118.    Plaintiff conveyed his acceptance of Defendants' offer(s), mentioned directly above, by and through his course of conduct. In particular, Plaintiff and Defendants reached a manifestation of assent when Plaintiff performed work for Defendants.

119.    Consequently, an employment contract was formed between Plaintiff and Defendants, and Defendants assumed the contractual obligation to pay Plaintiff $42.12 per hour worked or, alternatively, $48.00 per hour worked.

120.    However, as alleged in the Complaint hereinabove, by omission, Defendants have failed to pay Plaintiff at the above-mentioned rates of pay and therefore breached the employment contract on a multitude of occasions.

121.    In addition, as reiterated throughout this Complaint, Defendants owe Plaintiff wages by implementing and utilizing the Overtime Deduction Practice No. 1, Overtime Deduction Practice No. 2, and the Final Paycheck Deduction Practice. In accordance with the terms of the employment contract, and applicable statutory law, Defendants owe Plaintiff these wages at a rate of $63.18 per hour or, alternatively, $72.00 per hour.

122.    Defendants' actions described hereinabove were the direct and proximate cause that resulted in breaches of the employment contract, deprived Plaintiff of her entitlement to accrued pay, and resulted in lost wages.

123.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered tangible economic loss in the form of lost pay and is entitled to compensatory and consequential damages for Defendants' contractual breaches, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

### COUNT V
### UNJUST ENRICHMENT IN VIOLATION OF
### PENNSYLVANIA COMMON LAW

124.    Plaintiff incorporates the allegations contained in in the paragraphs above, as if fully set forth at length herein.

125.    Pennsylvania recognizes the equitable doctrine of unjust enrichment wherein the courts may imply a "quasi contract" and require a defendant to compensate the plaintiff for the value of the benefit conferred.  *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 619 (E.D. Pa. 2003), *citing Crawford's Auto Center v. State Police*, 655 A.2d 1064, 1070 (Pa. Cmwlth. 1995).

126.    A plaintiff must show three (3) elements to prove a cause of action of unjust enrichment: (1) a benefit conferred on a defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits by the defendant under such circumstances that it would be inequitable for the defendant to retain the benefit without paying its value. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999), citing *Schenck v. K.E. David, Ltd.*, 666 A.2d 327 (Pa. Super. 1995).

127.     Plaintiff conferred a benefit to Defendants by performing workplace duties and devoting hours of work that directly resulted in the financial and operational benefit of Defendants' business.

128.     Indeed, Plaintiff's performance of work hours to which he never received his agreed upon compensation rate, let alone the overtime rate of pay, as detailed and described above, constitutes a benefit that was directly conferred to Defendants.

129.     Defendants retained and accepted the benefit of Plaintiff's labor and services without issue, objection, or delay.

130.     By accepting Plaintiff's labor and services, and failing to pay Plaintiff at the rate of $42.12 per hour or, alternatively, $48.00 per hour, Defendants have been unduly enriched.

131.     As a matter of justice and fairness, it would be manifestly unjust and inequitable for Defendants to retain the benefit of the above-mentioned labor and services hours without paying Plaintiff due compensation.

132.     Defendants' actions described hereinabove were the direct and proximate cause of Defendants' unjust enrichment and the damages it owes Plaintiff for retaining a benefit without paying for its value.

133.     As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered tangible economic loss in the form of lost back pay and is entitled to recoup the amount of the benefit he conferred upon Defendants and that Defendants unjustly retained.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**PRAYER FOR RELIEF**

For the above-stated reasons, Plaintiff, Nicholas Loccisano, respectfully requests this Honorable Court to enter judgment in her favor, and against Defendants, Deller Professional Services, Inc., John Deller, and Pamela Deller and prays for relief as follows:

1. Declare and find that Defendants committed one or more of the following acts:

    i. Violated provisions of the FLSA by failing to pay Plaintiff overtime wages and did so willfully;

    ii. Violated provision of the MWA in failing to pay Plaintiff overtime wages and did so willfully;

    iii. Violated provisions of the WPCL in failing to remit wages to Plaintiff and did so willfully;

    iv. Breached its employment contract with Plaintiff in failing to compensate Plaintiff in accordance with terms of the contract;

    v. Was unjustly enriched at Plaintiff's expense and unlawfully retained a benefit without paying for its value; and

2. Award unpaid overtime wages, minimum wages, and unpaid wages at Plaintiff's contractual hourly rate, and other compensation denied or lost to Plaintiff to date by reason of Defendants' unlawful acts;

3. Award liquidated damages on all compensation due and accruing from the date such amounts were due in equal amounts pursuant to Plaintiff's unpaid minimum and overtime wages pursuant to the FLSA, MWA, and/or the WPCL;

4.    Award compensatory and contractual damages as a result of Defendants' breach of contract;

5.    Award pre-judgment and post-judgment interest where accorded by law;

6.    Award reasonable attorney's fees and costs of suit incurred prosecuting these claims;

7.    Award injunctive and other equitable relief as provided by law;

8.    Grant leave to amend to add claims under state and federal laws; and

9.    Award such other and further relief as this Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: May 26, 2023          By: */s/ Kyle H. Steenland*
Kyle H. Steenland (Pa. I.D. No. 327786)
Jordan M. Kurth (Pa. I.D. No. 317804)

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220
Telephone: 412.910.9592
Fax: 412.910.7510
kyle@workersrightslawgroup.com

*Attorneys for Plaintiff, Nicholas Loccisano*

**<u>VERIFICATION</u>**

I, **Nicholas Loccisano**, have read the foregoing Complaint in Civil Action and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief. I understand that this verification is made subject to the penalties of 18 Pa. C.S.A. 4904 relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

Dated: _____

*Nicholas D Loccisano*
_____
Plaintiff, Nicholas Loccisano